RAKESTRAW et al. v. STATE. (6 Div. 72.)

(Supreme Court of Alabama. June 26, 1924.)

1. **Homicide** ⊂⊃169(2) — **After admission of statement of deceased that he would not hurt accused's wife, exclusion of testimony of his conduct toward her held error.**

In murder trial, where defendants claimed to have acted in defense of female relatives who had gone on deceased's woods to gather brush brooms, and there was evidence for the state that deceased, meeting the women in the woods, had told them he was not going to hurt them but just wanted them to get off the land, whereupon, without more, they commenced screaming, it was error to exclude evidence for accused that deceased on that occasion, while the wife of one defendant was separated from the other women, seized her in a way indicating sexual desire while stating he was not going to hurt her; the court's statement that what occurred in the woods out of sight and hearing of defendants was inadmissible not being an exclusion of so much of what had occurred as the state had put in evidence.

2. **Homicide** ⊂⊃169(1)—**Exclusion of testimony that accused's sister, who was present at, and told him of, an alleged attack on his wife, was eight months gone with child, held error.**

In a prosecution for murder, where accused killed ·deceased shortly after being told by his sister and his mother of an attack by deceased on his wife, the fact that his sister, who was present at the alleged attack, was eight months gone with child, was admissible with other evidence going to show the condition and demeanor of his sister, his mother, and his wife, who met the accused only a few moments before he came upon deceased.

3. **Homicide** ⊂⊃277—**Evidence of defense of female relatives held for jury.**

In a prosecution for murder, evidence of justifiable defense of female relatives *held* for the jury.

4. **Criminal law** ⊂⊃789(17) — **Refusal of instruction for accused on reasonable doubt held error.**

In a prosecution for murder, refusal of a charge that, if the jury had a reasonable doubt as to accused's guilt growing out of any of the

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

evidence, to acquit him, was error, even if the general affirmative charge with hypothesis was properly given against him.

Appeal from Circuit Court, Cullman County; James E. Horton, Jr., Judge.

Albert and Jim Rakestraw were convicted of murder in the second degree, and appeal. Reversed and remanded.

Charge 2, refused to defendant Jim Rakestraw, is as follows:

"2. If, after considering all the evidence in the case, you have a reasonable doubt as to the guilt of the defendant Jim Rakestraw growing out of any part of the evidence, you should find him not guilty."

Brown & Griffith and F. E. St. John, all of Cullman, for appellants.

When a part of a conversation or transaction is put in evidence, the opposing party may rightfully call for the whole of it. Gibson v. State, 91 Ala. 64, 9 South. 171; Hill v. State, 210 Ala. 221, 97 South. 643; Allen v. State, 134 Ala. 159, 32 South. 318; Norris v. State, 16 Ala. App. 126, 75 South. 718; Pollack v. Gunter, 162 Ala. 320, 50 South. 155; Wefel v. Stillman, 151 Ala. 249, 44 South. 203.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

SAYRE, J. [1] Albert and Jim Rakestraw were convicted of murder in the second degree, for that they killed Jesse Nelson by cutting him with a knife. The Rakestraw and Nelson families lived on adjoining farms. On the afternoon of the killing the Rakestraw family and two or three friends were out under the trees in the yard, most of them engaged in a game of rook. There was a "scope of woods" on the Nelson farm which extended up to the line between the two. This wood lay back from the road and was between 300 and 400 yards from each of the dwelling houses. During the afternoon the mother of these defendants, a married sister, Mrs. Blackwelder, and Lola Rakestraw, the wife of the defendant Albert, went down into the wood, as had been the custom of the Rakestraw people for some years, to gather some brush brooms with which to sweep the yard. The two younger women were quite young, one of them about 18, the other about 16, years of age; Mrs. Blackwelder was 8 months gone with child, or perhaps it would be better to say that defendants offered to prove the fact more than once. Pretty soon, according to some of the evidence, the deceased, Jesse Nelson, was observed from the Rakestraw yard to go from the Nelson house in the direction of the wood, and shortly thereafter the Rakestraw women were heard screaming and seen coming out of the wood toward the Rakestraw house. The screams of the women, cries of distress, were heard at both the Rakestraw and the Nelson homes—were testified to by witnesses for state and defendants. Defendants and their younger brother—indicted with them, but acquitted—ran down to the women. Mrs. Nelson, mother of deceased, with several younger children also went toward the wood, arriving at intervals, some before and some after the difficulty in which Jesse lost his life. Lola Rakestraw, according to evidence for defendants, was much dishevelled, her clothes were torn, she had lost one of her shoes, her limbs were lacerated, she was bleeding at the mouth, and she was crying, "Oh, Jesse Nelson! Oh, Jesse Nelson!" Mrs. Rakestraw, the mother, upon meeting her sons told them that Jesse Nelson had assaulted her daughter-in-law. Thereupon the three defendants ran immediately toward deceased, who was on his side of the wire fence dividing the farms, and in the rencounter which straightway followed Jesse Nelson was cut to death. The foregoing is not a complete statement of all the tendencies of the evidence—some of which tended, how persuasively it is not for the court to say, to establish a case more favorable to defendants—but will suffice to make sufficiently clear the questions to which we shall refer.

Mancel Nelson, a young brother of deceased, who started in the direction taken by deceased before deceased were heard, being interrogated by the state, testified that his brother, the deceased, told the women that he was not going to hurt them, that he just wanted them to get off the land. On cross-examination this witness, referring to the same occasion, said:

"They was down in the hollow when they commenced screaming and crying. They was just taking on. Lola said, 'Oh, Lordy, take me.' Never heard nothing else. I could not hear Jesse say anything, only told Lola he was not going to hurt her. I heard him when he told her he was not going to hurt her. They were down in the woods then. I could not see them. I could not see what he was doing to her. I could not see whether he had hold of her or not. I did not see that."

Substantially the same process was followed, with the same result, in the case of the witness Charlie Nelson, another of the Nelson children. This testimony introduced on behalf of the prosecution had a very clear tendency to prejudice the defense, for that it went to show that Lola Rakestraw had no just cause of complaint against deceased, and thus paved the way to an inference that the Rakestraw women were making much ado about nothing or even that the whole story was concocted for the occasion, and so, as a jury would probably look upon such things, not without reason, that there was no real provocation for the attack upon de-

ceased which might have had the effect of reducing the killing to manslaughter. Having this view of the case in mind, defendants, upon the examination of Lola Rakestraw, proposed to show, among other things, that at the moment of her encounter with deceased she was alone in the wood, that her mother and her sister-in-law were in another part of the wood, that deceased came upon her from the rear and placed his hands upon her person, "grabbed her," in a way—as we construe the proposed testimony—to indicate sexual desire or excitement, saying: "Don't be frightened; I am not going to hurt you." The trial court, stating the theory on which were denied defendants' repeated efforts to get before the jury the whole story of what took place in the wood, held that what occurred in the wood out of sight and hearing of defendants was not admissible in evidence—not, however, excluding what the women told defendants. This, in general, was a correct statement of the relevant rule of evidence. But the state had elected to introduce evidence tending to show that deceased had been guilty of no offense against the women or any one of them, to that end or effect had elected to introduce evidence of a part of what occurred in the wood, and thereby opened the way for defendants to prove the full meaning and effect of all that was said and done in the same connection. McLean v. State, 16 Ala. 677.

"When part of a conversation, or part of a transaction [and what deceased said to Lola Rakestraw was part and parcel of what occurred between them], is put in evidence, the opposing party may rightfully call for the whole conversation or transaction." Gibson v. State, 91 Ala. 69, 9 South. 171; Allen v. State, 134 Ala. 164, 32 South. 318; Hill v. State, 210 Ala. 221, 97 South. 643.

Nor can the court's statement of the applicable rule of law in the case be taken as an exclusion of so much of what occurred as the state had put in evidence. There was no motion to exclude—as to which see McLean v. State, supra—nor did the language employed by the court purport to inform the jury clearly and emphatically, as at least it should have done if the court intended to eliminate the prejudicial evidence, nor did it at all instruct the jury that the evidence previously adduced by the state should not be considered. This will sufficiently indicate this court's opinion as to many of the exceptions reserved by the defendants.

[2] Defendants should have been allowed to show that Mrs. Blackwelder was eight months gone with child. This fact was admissible in connection with other evidence going to show the condition and demeanor of the women when defendants met them only a short distance and a few moments before they came upon deceased. If accepted by the jury it may have shed some light upon the question of the degree of defendants' guilt, if nothing more—upon the question of provocation.

[3] There was some evidence tending to show a situation in which defendants might have been acquitted on the ground that they interfered in the justifiable defense of one or more of their relatives, the women who had gone down to the wood to get brush brooms —notably the showing for Mrs. Blackwelder. The credibility of this evidence was a matter for the exclusive decision of the jury, of course, and the court committed reversible error in charging the jury that, if they believed the evidence beyond a reasonable doubt, they should convict defendant Jim Rakestraw of murder or manslaughter in the first degree. So the court erred in refusing to defendants all charges requested by them on the hypothesis—to state their general effect—that defendants interfered in the proper and necessary defense of their female relatives.

[4] Charge 2, refused to defendant Jim Rakestraw, should have been given, even though it were conceded that the general affirmative charge with hypothesis was properly given against him. Martin v. State, 3 Ala. App. 186, 57 South. 1032.

For the errors indicated, the judgment of conviction in the case of both appellants must be reversed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.