(116 So. 910)

**CLEMMONS v. STATE.** (8 Div. 689.)

Court of Appeals of Alabama. March 13, 1928.

Rehearing Denied April 3, 1928.

W. W. Callahan, of Decatur, for appellant.

Charlie C. McCall, Atty. Gen., for the State.
Brief did not reach the Reporter.

BRICKEN, P. J. The indictment in this case charged this appellant with the offense of murder in the first degree; the specific charge being that he unlawfully and with malice aforethought killed Carter Stanford by hitting him with a brick or stone, etc. The jury returned a verdict of guilty of murder in the second degree, and fixed the punishment at imprisonment in the penitentiary for a term of 20 years. Sentence was accordingly pronounced, and judgment of conviction rendered, from which this appeal was taken.

On the trial it was developed by the undisputed evidence that Carter Stanford was killed by having been hit with a brick by this defendant. The defendant relied upon self-defense for his justification of the act complained of. We find the evidence as to the attending facts and circumstances of the killing to be in sharp conflict, thereby making a jury question.

Appellant complains of several rulings of the court pending the trial. Exceptions were duly reserved in connection with these rulings, but it is apparent, from the insistences in brief of able counsel for appellant, that the exceptions reserved to the oral charge of the court are relied upon mainly to .effect a reversal of the judgment of conviction appealed from; this, in connection also with the refusal of certain written charges bearing upon the same question.

The first exception noted, as to the oral charge, was to an excerpt thereof, wherein the court, in defining to the jury the offense of murder in the second degree, among other things stated:

"It is not necessary that in order for a man to be guilty of murder in the second degree that there was a killing intended."

In considering this as well as other exceptions to the oral charge, we must have regard for the charge as a whole. In other words, the general charge of the court must be considered and construed as a whole, and in connection with the evidence, and if, when so construed it asserts a correct proposition applicable to the evidence, a disconnected part or sentence is not a reversible error, although it may not express all the necessary constituents of the offense. Furthermore, the oral charge must be taken and construed in connection with the given charges which are also a part of the law in a case.

In connection with the above-quoted excerpt, the court in the oral charge continued and said:

"If one with malice aforethought, either expressed or implied, willfully and unlawfully inflicts an injury upon or to the person of another which causes death, and which death would not have occurred but for such injury so inflicted, if the person inflicting such injury is guilty, such person is guilty of murder in the second degree. The act, gentlemen, must be an intentional act, but, if the act is done willfully, if it is done intentionally, and if it is done unlawfully, and

if the injury causes death, then, gentlemen, that is murder in the second degree."

The oral charge on this subject continues as follows:

"If done with malice and willfully and unlawfully, *directly putting the life of another* human being in jeopardy and does that intentionally, and if from that intentional act, thus done, death results to the other party, then, gentlemen, a man would be guilty of murder in the second degree, although he may not have actually intended that death should have been the actual result.

"You understand, gentlemen, the act must be willful and intentional, and it must be done with all of these other elements. But the law does say this much, that you cannot with malice, willfully and intentionally do an act knowing it—you see that your act is putting another's life in jeopardy and then by that intentional act the man is killed, say that you did not intend to kill that person." ·

We are of the opinion that the foregoing is in line with the following authorities:

Nutt v. State, 63 Ala. 180 (Stone, J.):

"Murder in the second degree may be committed without an intention to take life. Mere words, no matter how insulting, never reduce a homicide to manslaughter. So, if one strike another, not in self-defense, with intent to maim him, and death ensue, or, if one, in the attempt to commit a felony, kill another without intending it—in either case, he is guilty of murder in the second degree."

In *McKee v. State*, 82 Ala. 32, 2 So. 451 (Stone, C. J.), in discussing charge 25, to wit:

"If the jury believe, from the evidence, that the defendant did not mean then to voluntarily deprive the deceased of life, by striking him with the hand spike then he cannot be guilty of anything more than manslaughter in the first degree,"

—the court said:

"Charge 25 is erroneous as a legal proposition. Aside from the presumption that every one is held accountable for the natural and probable consequences of his acts intentionally done (McManus v. State, 36 Ala. 285), many murders are committed without actual intention to kill. Deaths, even when not thought of, ensuing from an attempt to maim, or from an attempt to commit any other felony, are examples of this kind of murder."

In Lewis v. State, 96 Ala. 6, 11 So. 259, 38 Am. St. Rep. 75, a case in many respects identical with the case at bar, where the homicide was committed, as here, by the throwing of a brick or brickbat, charge 22 was as follows:

"If the jury is not satisfied beyond a reasonable doubt that, when the defendant threw the piece of brick, he threw it with malice, and intended to kill Henry Lovelace, they must acquit him."

McClellan, J., for the court, said:

"It was not controverted that the defendant intentionally threw, or 'pitched,' the brick which produced death, at the deceased. Whether he intended to kill deceased or not, that result is chargeable to his voluntary act."

Bailey v. State, 133 Ala. 155, 32 So. 57 (Dowdell, J.):

"It was not necessary, to constitute murder in the second degree, for which the defendant was on trial, that he should have the specific intention to kill, at the time he fired the gun."

Rector v. State, 11 Ala. App. 333, 347, 66 So. 857, 862 (Brown, J.):

"Under the indictment in this case, the defendant was subject to conviction of any of the degrees of felonious homicide other than murder in the first degree [the indictment charging murder in the second degree]. Although he may not have intended to kill the deceased, if he intentionally committed upon him an assault which in its nature was calculated to produce death and as a result thereof death ensued, he would be guilty."

Appellant cites the case of Davis v. State, 214 Ala. 273, 107 So. 737. So far as that case is applicable to the point of discussion here, Sayre, J., in the Davis Case, said:

"Of course, one may commit murder without the specific intent to take the life of his victim."

■ It is contended by appellant that the refusal of charge 9 was error and insists that said charge is a literal copy of charge 42 in the Davis Case, supra.

No discussion of this insistence is necessary. Suffice it to say that refused charge 9 was fairly and substantially covered by other charges given at the request of defendant, notably, charges 13, 15, 16, 17, 18, 20, and 56. This is conclusive of this insistence, and applies also to refused charges 8, 10, and 11.

Refused charge 67 was fairly and substantially covered by the oral charge of the court and by charges given at the instance of defendant.

The remaining exceptions to the oral charge are not well taken. The discussion in brief as to the oral charge upon the law of self-defense is more or less hypercritical. The law of self-defense and the relative burden of proof incident thereto as charged appears to be in line with adjudicated cases in this state. We discover no error in the court's instructions in this connection, certainly none calculated to injuriously affect the substantial rights of the accused, under the facts of this case.

■ On the admission and exclusion of evidence but few exceptions are noted. In appellant's brief no mention is made of these exceptions; however, the law makes it our duty to give due consideration thereto, even though not insisted upon in brief and argument.

■ Witness Huie was asked by defendant on cross-examination, "Do you recall any language used by Kemp and Pat in the argument at that time and place?" And, on

cross-examination of witness Brown, defendant asked, "Were they arguing about Kemp's trouble with Pat there then, just before you got out there," and, upon objection, added "right while the fight was going on before Stanford was struck and just before Kemp was hit?" The court sustained objections by the state to these questions, but, notwithstanding this, the witnesses were later permitted to give in detail all that was said and done, and no evidence of facts relating to the res gestæ was restricted.

It was immaterial whether witness Shannon Kemp was present or not when court was called that morning. State's objection to the question was properly sustained. And in this connection the colloquy between the solicitor and defendant's counsel, relative to the witness and also defendant being in the calaboose, was properly eliminated by the court's instructions. This extraneous matter was first injected into the case by the defendant. It was improper, and the court so held, and by decisive instructions eradicated it from the consideration of the jury. There is no merit in the exception on this point. Moreover, the exception was to "the remarks of the state's counsel, and not directed to the court's rulings. There was no motion to exclude the alleged objectionable remarks, and this is necessary to properly present same for review.

The remaining exceptions have reference to the rulings of the court on the admission of dying declarations. The evidence as to the predicate for the admission of the dying declarations was sufficient to authorize the admission of the declaration. In this connection witness J. W. Stanford, brother of deceased, testified:

"That he was frequently out at the hospital while his brother was there, and that his brother told him, the day after he was hit, that he was dying; that he was not going to get well."

The evidence shows that he became unconscious on the fourth day after he was stricken, and died on the fifth or sixth day. Upon this predicate, the court allowed in evidence the following statement as the dying declaration of the deceased, to wit:

"I solemnly swear that I did not have a knife, rock, or gun in my hand after the fight. Pat Clemmons hit me in the head with a rock or brick without cause. I did not cause or try to cause a fight with Pat Clemmons in any way."

There was objection to the several parts of the dying declaration, and motions to exclude which were overruled. In these rulings the court is sustained by the case of Sullivan v. State, 102 Ala. 135, 142, 15 So. 264, 267 (48 Am. St. Rep. 22). The declarations in the Sullivan Case were: "Jim Sullivan cut me—he cut me for nothing—I never did anything to him." Brickell, C. J., for the court, said:

"The objections made to this testimony were that it was the conclusion of the declarant—the opinion of the deceased—and that it did not relate to the circumstances or transaction of the killing. There is nothing in this objection. The statement certainly did relate to the act, or transaction of the killing. * * * He also said Sullivan cut him for nothing, and that he, the declarant, did nothing to Sullivan. True this statement was very general, but it was admissible as a collective fact."

In Jordan v. State, 81 Ala. 20, 1 So. 577, the declarant stated: "Jule shot me, and Handy cut me, and all for nothing." Over objection and exception the court allowed said statements in evidence as dying declarations. Clopton, J., for the court approved the ruling of the lower court, and this same matter was again approved by the Supreme Court, through Stone, C. J., in the case of Jordan v. State, 82 Ala. 1, 4, 2 So. 460.

The evidence of the difficulty or mêlée, which resulted in the death of Stanford, was in conflict on many material points. But it appears from the evidence without conflict that during the whole disturbance but two blows were struck, and that this appellant hit both of the blows—one with a bottle that struck witness Kemp, the other with the brick that sent Stanford to an untimely grave.

There was no evidence that the defendant was a man of good character. It does not appear from the record that any inquiry of character was indulged; therefore refused charges 25 and 35, which dealt with the question of the good character of the defendant, were wholly abstract and thus properly refused.

We have discussed every proposition, or question, in this trial presented by this record. We discover no error of a reversible nature. The record proper being regular in all things, it is ordered that the judgment of conviction in the circuit court, from which this appeal was taken, be affirmed.

Affirmed.