(130 So. 175)

## JOHNSON v. STATE.
### 7 Div. 948.

Supreme Court of Alabama.

June 19, 1930.

Rehearing Denied June 28, 1930.

Further Rehearing Denied Oct. 23, 1930.

E. O. McCord & Son, of Gadsden, for appellant.

Charlie C. McCall, Atty. Gen., Merwin T. Koonce, Asst. Atty. Gen., J. B. Sanford, of Talladega, and Merrill, Jones & Whiteside, of Anniston, for the State.

634

THOMAS, J.

The trial was upon indictment for murder, and the verdict and judgment were in all respects regular and conformed to law. The punishment prescribed or fixed by the jury, after finding defendant guilty of murder in the first degree, was by "punishment as imprisonment in the penitentiary for life." This was in form and compliance with the statute for such verdict and judgment.

There are no questions for decision as to the organization of the court and jury, sufficiency of indictment, arraignment and putting the defendant for trial, his sentence and judgment on verdict rendered, other than that above indicated as to the fixing of his punishment. The record proper has been examined, and we find no error affecting the same.

For convenience we have tried to consider the argument of counsel for alleged "errors pointed out and discussed," by defendant's counsel, as to the incidents of the trial.

When the whole of the court's general charge is considered, it was sufficient and contained no erroneous instructions to the jury of which defendant can complain. There were many charges given at the request of the defendant, touching matters covered in the general charge.

As to refused charge 3, defendant's evidence showed he did not act in self-defense; and charge 4 is patently bad. The court instructed the jury fully as to several elements of self-defense and burden of proof as to the same.

Refused charge 9 unduly singled out phases of the evidence, did not state the elements of self-defense, and in the use of the words, "and pursued deceased," excluded the possibility of self-defense, and is otherwise faulty, was abstract, and did not instruct as to defendant's inability to retreat, or defendant's belief in his inability to retreat, without increasing his peril, or reasonable appearance of peril to life, or grievous bodily injury at the hands of deceased at the time and place in question.

Defendant as a witness had stated that he pursued the deceased as he fled about 100 yards and caught him near said barn where the cutting occurred.

The wife of deceased, a witness for the state, had testified on cross-examination, by defendant, that she did not beg deceased not to go down to the home of defendant on the night of the homicide, and never "said a word to" her husband as to "going down there." She was asked: "I will ask you if you didn't tell Mitchell Blake that night, say, 'I just begged and begged him not to go down there?'" The state's counsel objected to said question on the general grounds. The court sustained this objection, and to this ruling of the court defendant then and there duly excepted. The court stated to counsel that, if the relevancy of that testimony was later shown, the question may be renewed for proper predicate, etc. The court later allowed witness Rollins to state these facts on cross-examination by defendant. There was no error in the foregoing ruling; and said Mitchell Blake was allowed to testify as to some conversation or alleged statements.

Defendant had testified, without objection, that he was not mad with Rollins "about the automobile," was asked by the state if it were not "a fact that he went your (witness') security to buy an automobile?" the "one that was wrecked," and answered in the affirmative over defendant's objection and exception. In this there was no abuse of the right of cross-examination. The state sought to show the business relations of the parties as to that automobile, the fact of the damaged car, the inference of fact of the effort of deceased to get it taken back over the objection of the other or of the several parties in interest to have the injury repaired. This evidence was relevant as shedding light upon the several relations and actions of the parties and the motive for the homicide. It was not an abuse of discretion as to cross-examination to permit the state to ask defendant, a witness in his own behalf, if he did not say in Heflin on October 20th (the day of the homicide) that he would "shed every drop of blood" before he "would give up the car."

The deceased or surety for the price of the car had told the automobile man he would return next day to see about said car. This was open to the inference that his return was for the purpose of final adjustment or instructions as to repairs vel non, or its return and adjustment of the purchase price. The facts inquired about as to the car and relations of the parties were material, when considered in the light of the alleged disclosed relations of deceased and defendant's

wife, his propositions to her as to the car, and her subjection to his will and wish, and her confession or disclosures to the husband. They illustrated the conduct of defendant and deceased immediately before and at the time of the difficulty, and shed light upon the guilt or innocence of defendant and the degree of the homicide.

■ After defendant had testified that he pursued and cut the deceased in the altercation that took place, there was no reversible error on ruling on redirect examination of defendant. The record recites:

"When we all fell down there Mr. Rollins began to call for his gun. His people came out there, the whole family. Grady came out there. It was dark and I couldn't see whether he brought a gun out there or not.

"Thereupon the following occurred:

"Q. Well, I will ask you this question, if Mr. Rollins said to Grady 'Shoot him?' A. Yes, sir.

"Mr. Jones: We object to that, if the court pleases, that is after the difficulty.

"The Court: I sustain the objection.

"Mr. Burns: We save the exception.

"The Court: Did Mr. Rollins say: 'Grady, shoot him?'

"That was after the cutting?

"Mr. Burns: Yes, sir."

The immediate proximity as to time, place, and spontaneity, as to the questions and answers within the res gestæ, is not clearly shown by the record. Nelson v. State, 130 Ala. 83, 30 So. 728. There was no reversible error in that ruling. There was no self-defense, and the ruling was without prejudice to defendant.

The question, denied to defendant, that, "if you had come home on the day you were arrested down there expecting to come to Heflin that evening with Mr. Blake," called for a self-serving or uncommunicated motive. Likewise, there was no error in refusing the question, "When was (were) you expecting to bring him?" to Heflin—to Blake as to uncommunicated motive.

■ The question, "When Mr. Rollins had you say when he caught you, turned and caught you, I will ask you if you could get away from him, get loose from him?" should have been answered. There was no reversible error in the adverse ruling of the court, since witness immediately answered. He said:

"I run him about 100 yards. * * * I caught him. * * *

"Well, I went up in his arms and he throwed me and I fell on my back and he was on me. He had my left arm fastened. I tried to get up, and couldn't get up. He called for his gun about the time he hit the

ground. He called for his gun three times. * * *

"I was not there hid near that man's place and I did not waylay him and cut him down. I did not knock him in the head with a rock. He went to me house that night, it is about eight or ten steps across the cotton patch where he run and me behind him. I just followed about straight across. Both of us went across the cotton patch. That wasn't exactly toward his home. He missed his house about 60 or 70 yards. If he had stayed in the road he would have gone directly home. I followed him across the cotton patch. I did not see a gun in Mr. Rollins' hand at all. He did not have a butcher knife; if he did I didn't see it. Just his bare hands were all I seen. * * * We did not have a tussle in my own yard. I never had my hands on him up there, nor he on me. I didn't tell Owens that. I told Owens that he throwed me down, and that I cut him on the ground."

■ There was no reversible error in declining to allow defendant to testify that he "had never been a witness in a case," never "had any trouble with any man," and "never had a case in court."

■■ The wife had told the husband immediately before the homicide of the advancements, insinuations, importunities, and improper treatment of her by the deceased, and his coming to see her at Mr. Blake's house. A witness stated that he had seen deceased coming from Blake's house at the time referred to by the wife in her statement of misconduct of deceased, as she had detailed to the husband. The defendant and his wife had fully testified of the disclosure by the wife to the husband of the conduct of the deceased to Mrs. Johnson. The questions denied on objection were: "I will ask you if the Sunday up there at Mr. Blake's that Mr. Rollins came down there if he offered to pay the damage of that car if you would submit to him?" and "I will ask you further whether or not he said on that occasion or asked you whether or not you would consider him in case you should be left alone?" In these rulings there was no error as the defendant's evidence showed he was aggressor, and self-defense was not available to him.

■ The witness Blake, who had testified for defendant as of fact and to his good character, was subject to cross-examination, and denied that he had heard any rumor derogatory to the good character of defendant. The fact of such rumor or criminal acts cannot be made an issue of fact before the jury. Kelly v. State, 17 Ala. App. 577, 88 So. 180. There was no error in declining to permit defendant's father to testify in denial of such rumor. The argument of solicitor was in discussion of the testimony of "defendant's

character" and not of the independent fact of the truth of the rumor or alleged attack, and was without reversible error.

There was no error in overruling defendant's objection to the question propounded to Perkins as to the statements made by Blake, a character witness for defendant. It was in the nature of rebuttal of matter stated on cross-examination of Blake by the solicitor.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.