222 So.2d 175

**Pete GAUTNEY**

**v.**

**STATE of Alabama.**

**1 Div. 521.**

Supreme Court of Alabama.

March 27, 1969.

Rehearing Denied May 8, 1969.

Douglas Stanard, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

LAWSON, Justice.

The appellant, Pete Gautney, was convicted of murder in the first degree and was sentenced to life imprisonment.

Gautney was represented at all critical stages of the trial below and on motion for new trial by court-appointed counsel and he is represented on this appeal by the same lawyer as a result of an appointment by the trial court. Gautney has been furnished a free transcript.

In the trial below Gautney's counsel defended him in a most commendable manner. But in brief filed in this court Gautney's counsel argues only two grounds for reversal and the State's brief deals only with those two grounds; yet this court is required by the provisions of § 389, Title 15, Code 1940, in cases of this kind to "consider all questions apparent on the record or reserved by bill of exceptions [transcript of the evidence]." In Strickland v. State, 40 Ala.App. 413, 115 So.2d 273, the Court of Appeals observed that, though the silence of the Attorney General's brief might be construed as confessions of error, such a situation cannot under our statute (§ 389, Title 15), be a decisive factor in reversing.

We will deal first with the two points treated in the brief filed on behalf of appellant.

■ Appellant's counsel says in brief that the judgment of conviction should be reversed because the transcript of the record does not show that the trial court complied with the provisions of § 63, Title 30, Code, to the effect that in a capital felony it is the duty of the court on the first day of the session, or as soon as practicable thereafter, to make an order commanding the sheriff to summon not less than fifty nor more than one hundred persons, including those drawn on the regular venire for the week set for the trial of the case.

The above-summarized provisions of § 63, Title 30, *supra*, have no application to Mobile County. The selecting and impaneling of juries in Mobile County are controlled by the provisions of Act 366, approved November 6, 1959, Acts of Alabama 1959, Vol. 2, p. 955, as amended by Act 259, approved September 15, 1961, Acts of Alabama 1961, Vol. II, p. 2276. See Seals v. State, 282 Ala. 586, 213 So.2d 645. The trial court in selecting and impaneling a jury in this case followed the provisions of the Acts last cited above. Also see § 380, Title 15, Code, and Supreme Court Rule 25.

Appellant's "Proposition Two (2)" reads: "Written charges requested by the defendant in a trial of a capital case must be given to the jury by the court unless the same have been covered by court's oral charge."

In the "Argument" of his "Proposition Two (2)" appellant says that the trial court committed error in refusing to give his requested Charges 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 35, 36, 37, 38, 41, 42, 43, 44, 46 and 47.

But the only cases cited in support of that "Argument" are cases which held that it was error to refuse to give charges to the effect that "if the jury, upon considering all the evidence, have a reasonable doubt about the defendant's guilt, arising out of any part of the evidence, they should find him not guilty," where such charges were not covered by the court's oral charge or written charges given at the request of the defendant.

Amazingly enough, the record does not show that the trial court refused to give at the appellant's request a charge which is even remotely similar to the charges dealt with in the cases cited by appellant. On the contrary, the record shows that the court, at appellant's request, gave his requested written Charge 26, which reads: "The Court charges the Jury that, if the Jury, upon considering all the evidence, have a reasonable doubt about the Defendant's guilt, arising out of any part of the evidence, they should find him not guilty." For a review of the way this court has dealt with such charges, see Sanford v. State, 37 Ala.App. 603, 75 So.2d 109, where Judge Carr pointed out the conflicting holdings of this court relative to the refusal of such charges and followed our opinion in Rakestraw v. State, 211 Ala. 535, 101 So. 181, where we reversed because the trial court refused to give such a charge. The holding in *Rakestraw* seems to be presently considered by our appellate courts as being correct. See Lanier v. State, 43 Ala.App. 447, 192 So.2d 256.

We will consider the written charges which the trial court refused to give at the appellant's request after disposing of some other questions which are apparent on the record.

■ The trial court did not err in refusing to strike or quash the venire on the ground: "That the Court has not conformed to all of the prerequisites relating to the drawing and summoning a special Venire as set out in Title 30, Section 63 of the Code of Alabama, 1940." As we have shown above, § 63, Title 30, Code, no longer has application to Mobile County.

■ Reversible error is not made to appear in the action of the trial court overruling appellant's motion for the court to direct the court reporter to record verbatim "the closing arguments to the Jury of the District Attorney and the Defendant's Attorney."—§ 262, Title 13, Code. See Bland v. State of Alabama, 5 Cir., 356 F.2d 8.

■ The rule was invoked. But the trial court overruled the following motion made by counsel for appellant, the defendant below: "The Defendant further moves Your Honor and this Honorable Court to order that the witnesses for the State, who have testified in this case, adjourn to a different witness room, after they testify, other than the witness room which is assigned to the State's witnesses prior to their testifying in this case." The trial court did not abuse his discretion in overruling that motion. The court gave explicit instructions to the witnesses that they should not talk among themselves about the case. Among other instructions to the witnesses, the court stated: " * * * So don't discuss this case among yourselves at all, don't talk about it, *don't talk to any witnesses that have already testified* and don't discuss it at all, * * *" (Emphasis supplied) The record does not disclose that these instructions were in any manner disobeyed or that the rights of the accused were jeopardized by the refusal of the court to grant the motion. See Edgil v. State, 36 Ala.App. 379, 56 So.2d 677.

■ Reversible error is not made to appear in connection with the court's action in sustaining the State's challenge for cause to those prospective jurors who replied in the affirmative when asked by the court whether or not they had a fixed opinion against capital punishment.—§ 57, Title 30, Code.

It is not necessary to express an opinion as to whether or not the holding of the Supreme Court of the United States in

Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, decided on June 3, 1968, would be controlling here if the jury had fixed Gautney's punishment at death. In Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, decided on the same day as *Witherspoon*, the Supreme Court of the United States said that the holding in *Witherspoon* was not to be applicable where the jury recommends a sentence of life imprisonment, as was done in this case. See Seals v. State, 282 Ala. 586, 213 So.2d 645.

■ The trial court did not err to a reversal in overruling the objection of appellant's counsel to a request made by the Assistant District Attorney that State's witness Hubbard mark on a diagram or drawing the place where he was sitting at the time of the shooting or shortly prior thereto, since the witness had previously pointed out on the diagram or drawing the place where he had been sitting, but it had not been marked.

■ During the cross-examination of State's witness Hubbard, counsel for appellant examined the witness from some notes which he had made at the preliminary hearing. During the course of this part of the cross-examination of Hubbard, the Assistant District Attorney stood where he could look over the shoulder of counsel for appellant and placed his hands on the shoulder of appellant's counsel, whereupon the latter stated: "I object to the District Attorney walking over and putting his hand on my back. I ask for a mistrial." The trial court overruled the motion. We can see no reversible error in this ruling.

■ Immediately after the court overruled the motion for mistrial, the following occurred:

"MR. BRUTKIEWICZ [Assistant District Attorney]: Just don't have a slip of the lip now, just read what is written there.

"MR. STANARD [counsel for appellant]: I object to that remark, Your Honor. I object to every remark of that type that has been stated.

"THE COURT: Gentlemen, don't consider that in reaching your verdict in this case. Go ahead and let's try the case."

We think the remark of the Assistant District Attorney might well have been left unsaid, but in our opinion the court's prompt admonition to the jury removed any possible injurious effect the remark might have had on the jury.

■ The trial court did not commit reversible error in overruling appellant's objection to a question propounded State's witness Lillie Mae Waldon on redirect examination. The ground of the objection was that the question called for an answer which would not be in rebuttal to anything brought out on cross-examination. We have said that the allowance of a question on redirect examination of a witness, not in rebuttal to any matter brought out on cross-examination, rests in the discretion of the trial court. Treadwell v. State, 168 Ala. 96, 53 So. 290; Dukes v. State, 210 Ala. 442, 98 So. 368.

■ When the evidence for the State was all in and the State had rested its case, the appellant, defendant below, filed written motions to exclude the evidence and for the trial court to direct a verdict of not guilty of murder in the first degree, murder in the second degree, manslaughter in the first degree and manslaughter in the second degree.

This is not improper practice in criminal cases. Shiflett v. State, 262 Ala. 337, 78 So.2d 805; Walker v. State, 265 Ala. 233, 90 So.2d 221; Robinson v. State, 222 Ala. 541, 133 So. 578. This practice, however, is not considered to be proper in civil cases. Dorough v. Alabama Great Southern R. Co., 221 Ala. 305, 128 So. 602; Jack Cole Co. v. Hays, 281 Ala. 118, 199 So.2d 659; Western Ry. of Ala. v. Brown, 280 Ala. 543, 196 So.2d 392; Cooper v. Providence Hospital, 272 Ala. 283, 130 So.2d 8.

: The State's evidence showed that Gautney killed one Thomas Adams by shooting him with a pistol on Sunday afternoon, November 19, 1967, in a club, bar, or lounge generally referred to by the witnesses as the New Spic, located at 72 South Royal Street in the City of Mobile. Immediately after the shooting Gautney left the New Spic, accompanied by another man. Police officers were unable to locate Gautney on the day of the shooting. But early on the following morning, Gautney had his brother and sister advise a law enforcement officer that he was ready to surrender and his arrest was effectuated without difficulty.

The State's evidence further tended to show that just prior to the shooting Gautney was sitting on a stool at the end of a bar or was standing next to that stool. A pay telephone was situated on a wall a few feet from Gautney. The deceased, Adams, was sitting at a table with two fellow truck drivers and one or two girls. The table was about fifteen to twenty feet from Gautney and was about twenty feet from the telephone. Just prior to the shooting, Adams told his friends at the table that he was going to get some change and make a telephone call. The State's evidence does not show that Adams got any change, but he was walking in the direction of the telephone and of Gautney when the latter took a "gun" from his pocket and shot Adams. Adams was about eight to ten feet from Gautney when he was shot.

According to the State's evidence, Adams had not spoken to Gautney prior to the shooting. He was not armed. He had nothing in his hands. He had made no threatening gesture toward Gautney. Adams was about five feet ten inches tall and weighed approximately 175 pounds. According to the coroner of Mobile County, Adams' death "was caused by a gunshot wound with massive hemorrhaging to the abdominal cavity."

One witness for the State testified that he would not say Gautney was drunk at the time of the shooting, although he had

been talking very loud. Another State's witness expressed the opinion that Gautney was drunk. Apparently because of the loud manner in which Gautney was talking, one of Adams' companions, Hubbard, asked Gautney "if he was talking to this table."

At the time Adams arose to make the telephone call, beer was spilled at the table where he had been sitting and all of the people at that table stood up.

 It is clear that under the evidence offered by the State, which we have summarized above, the trial court properly overruled the appellant's motion to exclude the State's evidence.

At the conclusion of all the evidence, the appellant requested affirmative instructions in varying language as to first degree murder, second degree murder, first degree manslaughter and second degree manslaughter. The trial court gave appellant's requested Charge No. 8, an affirmative instruction as to manslaughter in the second degree, but refused to give the other affirmative charges requested by appellant, namely, Charges Nos. 1, 2, 3, 4, 5, 6, 7 and 9.

Gautney, the appellant, did not testify. Four witnesses, all of whom were in the New Spic at the time of the shooting, were placed on the stand by the defense. One of the witnesses was Gautney's sister, who was a customer; two of them were waitresses and the other was either a waitress or a customer.

The testimony of these four witness is hereafter summarized. Gautney entered the New Spic after the deceased and his party were seated at a table. He walked to the back of the building, where his sister was seated in a booth. He tried to obtain five dollars from her and upon being refused, he asked the other witnesses to let him have the money. They refused. Gautney became angry and walked toward the front of the building and either sat at a bar stool at the end of the bar or stood by

that stool. He was near the telephone, which he used. He was within a few steps of the entrance. Because they would not lend him money Gautney, in a loud voice, addressed insulting remarks to his sister and the other women. Gautney's conduct attracted the attention of the deceased, Adams, and the other men seated at his table. They stared at Gautney and Gautney told them to stop staring at him. One of the deceased's companions, Hubbard, "was hollering back at Pete," according to one defense witness, and asked Gautney "did he want to make something out of it and Pete said it don't matter." Hubbard also asked Gautney, "You think we are scared of you?" According to one of the defense witnesses, all three of the truck drivers "got up" as a result of the argument or "fussing" which was going on between Gautney and one or more of the truck drivers. According to another witness, while this "fussing" was continuing Hubbard and the deceased walked toward the front of the building where Gautney was sitting or standing and where the telephone was located. The deceased walked ahead of Hubbard.

Neither Adams nor Hubbard had a weapon. Neither of them reached in their pockets or made any "grimacing look" at Gautney. One of the defense witnesses stated that no one "did anything in an aggressive attitude towards anybody, except Pete." It was when the deceased, Adams, was walking toward Gautney and toward the telephone that Gautney pulled his pistol and shot Adams. The bullet entered Adams' body near his navel. Gautney weighed between 340 and 360 pounds.

Neither the evidence adduced by the State nor that by the defense shows that Adams or his friends had in their possession any kind of weapon or threatened Gautney verbally or made any threatening gesture toward Gautney.

Each of the witnesses for the defendant testified that Gautney was drunk. One said he "was drunk enough to stagger."

Another said "he was sorta drunk, real drunk."

Aside from the fact that there was a conflict in the evidence as to whether Gautney was "drunk" at the time of the shooting, there was no evidence sufficient to show as a matter of law that Gautney was intoxicated to such an extent as to even reduce the grade of the offense, much less require an acquittal of all offenses covered by the indictment.

In Walker v. State, 91 Ala. 76, 82, 9 So. 87, 89, Mr. Justice McClellan, writing for the court, said:

"But, aside from this, the others of these special charges numbered 1, 6 and 7, are intrinsically bad, in that they assume that mere drunkenness, whether to insensibility or not, has the effect of reducing a homicide from murder in the first degree to a lower grade of the offense. The true rule in this regard, as often reiterated by this court, is that inebriety which may in extreme cases have this effect, must be so excessive as to paralyze the mental faculties, and render the accused incapable of forming or entertaining the design to take life. Mere drunkenness, voluntarily produced, is never a defense against a criminal charge, *and can never palliate or reduce the grade of an offense, unless it is so extreme as to render impossible some mental condition which is an essential element of the criminal act.* (Authorities cited)" (Emphasis supplied)

Under the evidence, the trial court correctly refused appellant's requested affirmative instructions 1, 2, 3, 4, 5, 6, 7 and 9.

The trial court did not charge on self-defense in its oral charge and refused appellant's written charges 10, 13, 14, 15, 16, 18, 20, 21, 22, 23, 35, 36, 37 and 46, all of which dealt with self-defense. No self-defense charge requested by appellant was given by the trial court.

We are of the opinion that the evidence in this case did not call for the giving of self-defense charges. We have said that where there is no evidence of self-defense, written requested charges which deal with that subject are properly refused. Deloney v. State, 225 Ala. 65, 142 So. 432; Tarver v. State, 137 Ala. 29, 34 So. 627; King v. State, 71 Ala. 1; Poe v. State, 87 Ala. 65, 6 So. 378; Johnson v. State, 221 Ala. 632, 130 So. 175.

Requested Charges Nos. 11, 16, 38, 41 and 42 (without considering vel non their correctness) were substantially and fairly covered by the trial court's oral charge and were, therefore, refused without error.—§ 273, Title 7, Code; Garrett v. State, 268 Ala. 299, 105 So.2d 541.

Section 273, Title 7, *supra*, is the only authority cited in the State's brief in support of the action of the trial court in refusing most of the written charges requested by appellant. As we have shown, that section had no application to self-defense charges which the trial court refused because he did not charge on self-defense in his oral charge. There are other refused written charges requested by the appellant which were not covered by the trial court's oral charge. We will now deal with them.

Refused Charge No. 19 to the effect that if the shot which killed the deceased was accidentally fired, the jury cannot convict the defendant, was faulty for the reason, if for no other, in that it failed to define the meaning of the word "accidentally." Dobbins v. State, 274 Ala. 524, 149 So.2d 814.

In our more recent cases, refused Charge No. 24 has been condemned as invasive of the province of the jury, and also as misleading. Russo v. State, 236 Ala. 155, 181 So. 502; Payne v. State, 261 Ala. 397, 74 So.2d 630; Smith v. State, 230 Ala. 18, 158 So. 808; Gipson v. State, 262 Ala. 229, 78 So.2d 293. Earlier cases approving the charge have been overruled. See Ex parte Davis, 184 Ala. 26, 63 So. 1010.

Appellant's refused Charge No. 43 reads: "The Court charges the Jury that if the Defendant did not intend to kill the deceased, then you can not convict the defendant of Murder in the First Degree or Murder in the Second Degree."

We think this charge was refused without error. In Scott v. State, 211 Ala. 270, 100 So. 211, the trial court refused to give at appellant's request the following charge: "4. If you believe from the evidence that the defendant had no intent to kill the deceased at the time she was shot, he could not be convicted of murder in either degree, nor of manslaughter in the first degree." We held the charge properly refused, saying:

"The intentional firing of a pistol at the person of another, whereby death ensues, may be *murder* or manslaughter in the first degree, although there was no intent to kill, but merely to frighten the deceased. The intentional doing of an act so greatly dangerous to human life may supply all the legal elements of intent, however free the action may be from actual purpose to kill. Charge No. 4 was properly refused. Bailey v. State, 133 Ala. 155, 32 So. 57; Fowler v. State, 161 Ala. 1, 49 So. 788; Lewis v. State, 96 Ala. 6, 11 So. 259, 38 Am.St.Rep. 75; Lawson v. State, 155 Ala. 44, 46 So. 259; 29 C.J. p. 1295, § 69, p. 1119, § 106, p. 1128, § 116." (Emphasis supplied) 211 Ala., 273, 100 So., 214.

Also see Smith v. State, 154 Ala. 31, 45 So. 626; Fowler v. State, 155 Ala. 21, 45 So. 913; Goodman v. State, 15 Ala.App. 161, 72 So. 687; Jones v. State, 13 Ala. App. 10, 68 So. 690; Clemmons v. State, 22 Ala.App. 418, 116 So. 910.

Appellant's Charge No. 43 also was refused without error in that it concluded to acquittal on a hypothesis that justified that result without a due consideration by the jury of all the evidence. Lee v. State, 265 Ala. 623, 93 So.2d 757.

· Appellant's· Refused Charge No. 44 reads: "The Court charges the Jury that unless they believe from the evidence beyond a reasonable doubt that the Defendant fired the shot intentionally that killed the deceased, then you should find the Defendant not guilty."

We think this charge was properly refused as abstract, there being no evidence that the shot was not fired intentionally. ·Millender v. State, 147 Ala. 688, 40 So. 664.

Mindful of our duty under § 389, Title 15, Code, we have examined the record for any reversible error, whether pressed upon our attention or not. We find no reversible error in the record and the judgment of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.