238 So.2d 911

**Bill JACOBS**

**v.**

**STATE.**

**6 Div. 70.**

Court of Criminal Appeals of Alabama.

Aug. 25, 1970.

Walker Norris, Palmer W. Norris and William Conway, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

CATES, Judge.

Second degree murder: 99 years imprisonment.

## I

February 6, 1968—according to Jacob's testimony—he came home late and intoxicated. His wife found fault with both states.

After some words from her, Jacobs announced he would go off for a few days. He carried clothes to his car and while carrying some more and his shotgun, he was assaulted by his mother-in-law, who threw laundry bleach in his face. The gun fired, twice.

The State's version of the evidence would negative accident. The jury seems to have accepted this view.

## II

The first claim of error arose during cross-examination of State witness, Pamela Butler, Jacob's step daughter:

"Q Was your daddy a good daddy, Pam?

"MR. BATCHELER: We object to that, if the Court please.

"THE COURT: Sustain the objection."

Appellant argues that this point is covered by Adams v. State, 280 Ala. 678, 198 So.2d 255. However, aside from her testimony that Jacobs earlier in the day had been drinking, her testimony was not importantly adverse. Jacobs himself testified to splitting nearly a fifth of vodka with

two other companions. If there were error in the trial judge's ruling, it was harmless. McElroy, Evidence, (2d ed.) § 149.01.

Also, the form of the question does not strictly call for the witness's feeling toward the defendant but rather for her impression of his conduct and attitude toward her.

### III

During the voir dire examination of John Fassina, a police officer of Fultondale, we find:

"MR. WALKER NORRIS: Did you receive a call on—from any one to go to the home of Bill Jacobs?

"A Yes, sir.

"MR. WALKER NORRIS: Did you then go there?

"A Yes, sir.

"MR. WALKER NORRIS: When you got there, who was there?

"A Mrs. Jacobs was in the front yard.

"MR. WALKER NORRIS: Did you talk with her?

"A A very limited conversation. It wasn't too long.

"MR. WALKER NORRIS: Just tell me what she told you, Mr. Fassina.

"A She said, 'Jake, don't go in the house. Bill is in there, drinking, and he has shot my mother.'

I said for her to go to Walker Norris' house and get out of the way, and I called Chief Hamilton.

"MR. WALKER NORRIS: Did you wait for Chief Hamilton to get there?

"A Yes, sir.

"MR. WALKER NORRIS: Shortly after that, did you talk to the defendant, Bill Jacobs?

"A Yes, sir.

"MR. WALKER NORRIS: What did you ask him?

"A I asked him did he call for the police.

"THE COURT: Where were you at that time?

"A On the carport.

"THE COURT: Where was he?

"A He walked out of the house.

"MR. WALKER NORRIS: You were standing there, together?

"A Yes, sir.

"MR. WALKER: You asked him did he call for the police?

"A Yes, sir.

"MR. WALKER NORRIS: And what did he say?

"A I don't remember what he said, and his speech was very incoherent.

"MR. WALKER NORRIS: Did you ask him, 'what happened, Bill?'

"A Yes, sir. I said, 'What in the world happened, Bill? Did you call the police? What in the world happened?'

"MR. WALKER NORRIS: Did he make a statement to you?

"A Yes, sir.

"MR. WALKER NORRIS: Did you understand what was said?

"A Yes, sir.

"MR. WALKER NORRIS: What did he say?

"A He told me that he had shot his mother-in-law, and I said, 'Well, is she dead?' and he said, 'I think so. I think I blowed her half in two.'

"THE COURT: You say these things were stated to you in reference to the question you asked him what happened?

"A Yes, sir.

"MR. WALKER NORRIS: And, at that time, you had been told that he had shot her?

"A I had been told by Mrs. Jacobs.

"MR. WALKER NORRIS: Before you asked him that question, did you inform him of his constitutional rights?

"A No, sir.

"MR. WALKER NORRIS: Did anybody else in your presence?

"A Not in my presence.

"MR. WALKER NORRIS: Was Chief Hamilton there with you at the time you asked him that question?

"A I don't know if he heard me, or not, but he drove up just about the time Mr. Jacobs walked out of the house, and he told me to take him to jail.

"MR. WALKER NORRIS: Was Chief Hamilton close enough to hear what you said?

"A He was close enough, but I don't know if he heard it."

As to this incident the trial judge ruled as follows:

"Now, as to what happened out at Jacobs' house, when Officer Hamilton and Officer Fassina were there, the Court has taken into consideration the fact that at the time the defendant came to the door and came out the door and made the statements allegedly made and attributed to him as having been made, that is, something to the effect he had shot the woman, and any other portion of that particular statement, the Court finds that the officers had been informed by the lady—I believe it was Mrs. Jacobs—out there in the yard that the defendant had shot someone there; and that when the defendant came, he went to the door, or through the door, and there talked to Officer Fassina; that Officer Fassina then asked the defendant if he had called the police, and what happened, and that, in response to that question, the defendant made the statement attributed to him by the officer at that time.

"The Court rules, that portion of the statement that was attributed—that was outside, prior to the time that the defendant had been placed under. arrest, and shortly after the officers came there, and after the officers had been informed that the defendant had shot a woman in the house—I rule that is admissible, those statements are admissible, and any objection and exception you all want to get in the record at this itme, you may do so, and any that you might want to get before the jury."

█ We agree because the defendant was not in custody. Ison v. State, 281 Ala. 189, 200 So.2d 511.

## IV

█ As to intoxication to destroy the power to form the specific intent in murder, we note that the defendant tendered no charges along this line. Nor would the evidence have compelled the court to have given a properly drawn instruction. See Gautney v. State, 284 Ala. 82, 222 So.2d 175.

We have carefully considered the entire record. Code 1940, T. 15, § 389. From such examination we conclude that the judgment below is due to be

Affirmed.