148 So. 166

## NARRELL v. STATE.
### 8 Div. 610.

Court of Appeals of Alabama.
March 28, 1933.

Rehearing Denied May 9, 1933.

Street, Bradford & Street, of Guntersville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

Brief did not reach the Reporter.

BRICKEN, Presiding Judge.

This is the second appeal in this case. 24 Ala. App. 149, 132 So. 45.

The appellant was originally indicted and tried for murder. On that trial he was convicted of manslaughter in the first degree. On the trial, from the judgment of conviction from which this appeal was taken, he was again convicted of manslaughter in the first degree, and was duly sentenced to seven years' imprisonment in the penitentiary.

Without dispute or conflict the evidence disclosed that the defendant killed Bert Sweat, the deceased named in the indictment, by shooting him with a pistol. The state contended that the killing was wholly unjustified in law and in this connection offered the testimony of several witnesses which tended to show that at the time of the killing the deceased was unarmed and was making every effort to get away from defendant who was pursuing him with a pistol. The killing occurred at the rear end of a store at Oleander on Sunday about midday. The evidence of the state tended to show there were four shots fired by the defendant, each shot taking effect in the body of deceased, and there was evidence tending to show that the last shot, which caused the death of deceased, was fired in close proximity and after the deceased had been shot down and was lying upon the ground. Several parties were present at the place where the killing occurred, all of whom, except the defendant, testified that Sweat, the deceased, was unarmed at the time of the killing. In this connection, however, the defendant testified, as shown by the record, as follows: "At the former trial I said Bert Sweat did not have a gun. I now say Bert Sweat did have a gun; I still say that the best of my judgment that he had a gun. I saw something in his clothes, you could tell a pistol under his clothes. He did not pull it out. He never did get his hand out of his shirt." As stated, this testimony by the defendant was the only testimony by any witness which tended to show that the deceased, at the time he was killed by defendant, was armed. All the other witnesses, both for the state and the defendant, testified that Bert Sweat was not armed at the time he was killed.

■ The action of the court in overruling defendant's motion for a new trial is not presented for review. Nothing is contained in the bill of exceptions relative to the motion for a new trial, and as stated in this case upon former appeal: "The bill of exceptions must contain a sufficient recital to show the making of such motion, the ruling thereon, and exception thereto." Narrell v. State, 24 Ala. App. 149, 132 So. 45, 46, and cases cited.

The points of decision relied upon and properly presented on this appeal are confined to the court's rulings upon the admission of evidence, and upon special charges requested by the respective parties.

The exceptions reserved to the court's rulings upon the admission and rejection of evidence are too innumerable to be separately discussed in this opinion; we, therefore, refrain from so doing, as it could serve no good purpose and would result in extending this opinion to undue length.

■ Appellant, as is permissible, though not required, has assigned errors which upon investigation, we find, present every ruling of the court upon the testimony to which exception was reserved. Each of these rulings has. been read and considered by this court sitting en banc, and we are of the opinion that no error prejudicial to the substantial rights of defendant appear in any of these rulings as shown by assignments 1 to 33, inclusive.

■■ By assignment of error 34 appellant complains of the ruling of the court wherein state witness M. Roe, on rebuttal, testified, "I know the defendant Dock Narrell, have known him since about 1920." The state then asked the witness the following question: "Do you know his general character for peace and quiet in that community, from what people say about him, do you know his general reputation for peace and quiet at the time of the difficulty?" The defendant objected to this question because he had not put in issue his character for peace and quiet. The court overruled the objection and defendant excepted. The witness answered, "that he knew it and that he couldn't say it is good or bad." The state then asked the witness the following question: "What would you say about it?" And the witness answered, "I would. say it is good for peace and quiet." The state then asked the witness the following question, "What about his general character there in the community?" The witness answered: "That is a little bad." We will not predicate reversible error upon the ruling of the court here complained of, for the reason that the answer of the witness, to wit, "I would say * * * that the character of defendant * * * for peace and quiet is good," was highly favorable to defendant, and rendered the erroneous ruling of the court innocuous. Certainly no injury inured to defendant in this connection. Where this affirmatively appears, the appellate courts will not reverse. The governing rule so requires. Sup. Ct. Rule 45, 4 Code 1923, p. 895.

The oral charge of the court, together with the numerous special charges given at the request of respective parties, covered every

phase of the law governing the issues involved upon the trial of this case; and fairly and substantially covered such of the refused charges requested by defendant as properly stated the law. In this connection every substantial right of the accused was carefully safeguarded.

We discover no reversible error on the trial of this case in the court below, and as a result we hold that the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.

### On Rehearing.

This court has no inclination, and certainly no desire, to deprive appellant of any legal right in the review of his case, and hence we comply with the request of his eminent counsel by herein setting out appellant's version of the facts of the case as stated in his brief. As there stated, his version of the facts is as follows:

"The real facts appear to be, as contended by appellant, that the deceased and his brother entertained very bitter animosity against the defendant, growing out of a charge that defendant had seduced their niece and the counter charge by defendant that Oliver Sweat was the seducer of his own niece.

"Shortly prior to the killing the deceased and his brother Oliver had picked a quarrel with defendant at a singing in Guntersville, and on another occasion Oliver had brought on another quarrel with him at the home of one Andy Perkins. The evidence was undisputed that the character of the deceased for peace and quiet was bad. There was also evidence of threats by him and his brother against defendant.

"When the crowd happened to gather at the little store on that Sunday, both of the Sweats were drinking. It is certain that defendant was not drinking to any appreciable extent, if at all. Some of the witnesses were also under the influence of liquor. The ground was well prepared for trouble when the Sweats, well steeped in liquor, were brought face to face with the man whom perhaps they most detested. One witness, Gordon Black, testified that the first he heard, deceased said, 'there was a son of a bitch there he was going to whip.' Milton Brooks said the first thing that attracted his attention was that he 'happened to notice how

these boys were watching each other'; that 'the Sweat boys seemed to be watching Dock.' Defendant testified that the two Sweats 'began to whisper out there to each other'; that he could tell 'they were mad'; that he watched them and they kept watching him; that deceased then said to Oliver Sweat, 'Get him'; that Oliver started up where he was and that deceased began walking up too, and that he (defendant) told them to stop and that they stopped.

"The State's witnesses corroborated defendant. Woodrow Jones testified that Oliver Sweat 'started around that way' (indicating where defendant was standing) and that defendant drew his pistol and told Oliver to stop, and that deceased then started around and that defendant drew the pistol on deceased. Oliver Sweat, brother of the deceased, and a participant with deceased in the difficulty, testified that 'the first thing that was done I started up on the front porch (i. e., where defendant was then standing) and Narrell commenced running backward and said, "God damn you, don't come by me," and I made another step and Oat Ballew ran out and shoved me back. I stood there a minute and went on back to where Barclay's car was.'"

The foregoing construction of the facts, whether intentionally or not, apparently ignores the evidence adduced upon behalf of the state and the tendencies thereof. In the opinion, to which we adhere, we stated that the facts in evidence were in sharp conflict and were therefore for the jury to determine.

In the opinion, it is stated, this court sitting en banc had read and considered each insistence of error as shown by appellant's assignments 1 to 33, inclusive, and found no error prejudicial to the substantial rights of the appellant. Other assignments of error were treated; hence as the writer sees it no insistence of error on this appeal has been ignored or pretermitted, and the appellant deprived of no substantial right. The questions comprehended in said assignments of error are elementary, and need no specific discussion.

From the whole record it appears the defendant has been accorded a fair and impartial trial free from prejudicial error. More than this, he has no right to demand or expect. The application for rehearing is overruled.

Application overruled.