LEIGH-M. CLARK, Supernumerary Circuit Judge.
The crime charged was murder in the first degree of Larry King by shooting him with a rifle. Appellant was found guilty of murder in the second degree and sentenced to fifteen years imprisonment in the penitentiary. Defendant had pleaded not guilty and not guilty by reason of insanity.
The evidence abundantly, and almost conclusively, shows that defendant killed King by shooting him with defendant’s rifle at close range, firing the rifle three or four times, and that two bullets struck him, one entering his head and the other his right shoulder, penetrating the victim’s left lung. The victim died almost immediately thereafter, not being able to rise from the spot where he had fallen.
The killing was one of the frequent aftermaths of an inordinate beer-drinking, as well as- wine-drinking party, that commenced on the part of some at least, including defendant, early in the morning and continued until evening twilight. Defend *1186 ant had been the common law husband of decedent’s mother for about two years. The three had lived in the same house along with a sister of the deceased. The victim was eighteen years of age; defendant was twenty-four. Defendant had planned the barbecue and drinking affair, which took place in the back yard of the house where he lived with the victim and others, and had drunk about a dozen cans of beer and one-half of a fifth of wine before the shooting occurred.
Defendant’s common law wife (the victim’s mother), accompanied by the victim’s sister, had been to Columbus, Georgia, during the day and returned about mid-afternoon. According to the victim’s sister, she and her mother did not tarry with defendant and her brother and others who had joined the group in the back yard, but she went in the house to go to bed.
She testified that defendant came in the house and had a fight with her mother; the sister jumped between them to stop them, and defendant slapped her. Thereupon her brother, the victim, ran in and jumped between them; defendant and Larry “went to fighting,” during which time defendant punctuated his remarks with filthy language. They both left the house with Larry running and defendant proceeding to a shed or an outhouse and obtaining a rifle.
According to the undisputed evidence, the two met again a short time before dark on the road some distance from the house, at which time it seemed that they both were in the process of composing their disagreement, but instead of doing so, defendant shot Larry. Defendant testified that he remembered almost everything that happened the day of the homicide until about the time that the victim’s mother and sister returned from Columbus, but that he had no recollection of the events, including any shooting or use of a rifle, between that time and the time of his arrest later on that night.
There was evidence by relatives, friends and acquaintances of defendant that he was in an automobile accident about nine years before, as a result of which he was confined to the hospital for three or four days, with a history of some unconsciousness and with findings of bruises of the chest and injury to the head. These lay witnesses testified in effect that prior to the automobile accident defendant acted normally, but that thereafter he started drinking and when drunk would act “crazy.” Joining the witnesses as to that testimony was the defendant’s common law wife, the mother of decedent.
Defendant presented a motion to exclude the evidence, which was denied, and filed a motion for a new trial, which was overruled. In insisting that such action of the court constituted reversible error, appellant argues chiefly that the evidence shows that defendant was so intoxicated that he could not have been guilty of murder in the second degree.
In Gautney v. State, 284 Ala. 82, 88, 222 So.2d 175, 181, in quoting from Walker v. State, 91 Ala. 76, 82, 9 So. 87, 89, it is stated:
“ ‘. . . Mere drunkenness, voluntarily produced, is never a defense against a criminal charge, and can never palliate or reduce the grade of an offense, unless it is so extreme as to render impossible some mental condition which is an essential element of the criminal act. (Authorities cited)’ (Emphasis supplied)”
In Strong v. State, 52 Ala.App. 237, 291 So.2d 325, it is stated:
“. . . Voluntary drunkenness does not excuse the commission of a crime and it is not a valid defense. It is a legal defense to crimes involving a specific intent. If one becomes so intoxicated as to be unable to entertain a specific intent then drunkenness to that degree is admissible in his behalf and becomes a jury question.”
Defendant’s varied activities, his conduct and demeanor, as described by the witnesses, including his chasing the victim, looking for and finding the rifle, and effectively using it with calmness and dexterity, *1187 preclude a finding as a matter of law that he was so intoxicated that either malice or intention to kill did not exist. The jury was comprehensively and correctly charged on the subject, and its finding was well within its province.
The point is made for the first time on appeal that the failure of the evidence to show that appellant used aliases, in support of his designation in the indictment as Sylvester Hogan, alias Sylvester Louis Hogan, alias Sylvester L. Hogan, alias Sylvester Morgan, entitled defendant to a favorable ruling on his motion to exclude the evidence.
The loading of an indictment with unnecessary aliases proved fatal to the State under the special circumstances of a prosecution for forgery. Tucker v. State, 43 Ala.App. 163, 184 So.2d 366 (1966). As a general rule, however, identification of defendant by proof as to one of the names designated in the indictment is sufficient. It was not necessary for the evidence to show that defendant was known or called by his unnecessarily alleged aliases. Evans v. State, 62 Ala. 6 (1901); Cantelou v. State, 210 Ala. 648, 98 So. 893 (1924).
Appellant misconceives a part of the transcript of the testimony, which he says shows that “the Attorney for the Defendant was asking questions of the witness concerning a conversation that the deceased and the Defendant were having immediately prior to the shooting.” The part cited is as follows:
“Q They were talking about Sylvester, weren’t they?
“A No, I don’t know whether they were talking about him or not. I’m pretty sure they wasn’t talking about him, but he just said—
“MR. PRICE: I object to what the conversation was anyway. It would be hearsay.
“THE COURT: I sustain that.
“MR. LEONARD: Your Honor, it’s actions of the deceased shortly prior to the time of his death.”
It is obvious that the attorney for appellant, who was not the attorney for defendant on the trial, which attorney is now deceased, was inadvertently misled by the statement of counsel for the defendant on the trial, in which he was apparently referring to the particular conversation between the witness and the defendant as to “actions of the deceased,” but was not referring to actions or conversations between deceased and the defendant. The court was not in error in its ruling.
Appellant next argues that the trial court was in error in allowing the State to show that after defendant had been fully informed of his privilege against self-incrimination, as guaranteed by the Fifth Amendment, and his right to counsel, as secured by the Sixth Amendment of the Constitution of the United States, the defendant declined to make a statement. Notwithstanding some confusion on the subject, as indicated by the record, we conclude that the record does not support the dedicated efforts of appellant’s counsel in this respect. The State attempted, and perhaps at one time it seemed that it would be able, to show that after defendant was informed of his rights, he declined to make a statement, but the court expressly ruled otherwise, as shown by the following statement of the court, during the colloquy among the court and counsel out of the presence of the jury:
“THE COURT: Well, I won’t — I’ll permit it if he gave him his rights again, but I think it is just going to have to speak for itself at that point. I don’t want the ‘no statement’ to go in there. I think that would be prejudice.”
After the jury returned, the record shows:
“Q Now, Mr. Litaker, I believe you testified that after arresting the defendant, you then took him to Headquarters and on the way to Headquarters you testified to the statement he made. Now, after you got to Headquarters did you again advise the defendant of his Constitutional Rights?
“A Yes, sir.
“Q From the Standard Rights Form?
“A Yes, sir.”
*1188 Thus ended questions asked the witness by the State as to the particular matter under consideration.[1]
During defendant’s direct examination of defendant’s common law wife, the following occurred:
“Q Based on your general knowledge of Sylvester Hogan during the period of time you have known him and your opportunity to observe him that afternoon, do you have an opinion as to whether he could tell the difference between right and wrong—
“MR. PRICE: I object to that, Your Honor. That would be for the Jury.
“THE COURT: I sustain your objection.”
We have some difficulty determining why the court sustained the State’s objection. Certainly the ground of objection was not a valid one. The mere fact that the jury has to pass on a question of fact does not, in and of itself, preclude proper opinion evidence thereon of a witness. It has been uniformly held in Alabama, as stated in Hamilton v. State, 281 Ala. 448, 203 So.2d 684, 686-687 (1967):
“Witnesses, whether expert or non-expert, may express their opinion as to the sanity or insanity of defendant on trial for crime. Parrish v. State, 139 Ala. 16, 42, 36 So. 1012; George v. State, 240 Ala. 632, 636, 200 So. 602.”
The admission in evidence of the opinion of a witness as to whether the accused could discriminate between right and wrong was upheld in Powell v. State, 25 Ala. 21 (1854) and in Deloney v. State, 225 Ala. 65, 142 So. 432 (1932). It is not absolutely clear as to the time target of the question, that is, whether the inquiry was made as to defendant’s mental competency in general while the witness knew him, or to his competency on the occasion she observed him that afternoon. In this connection, it is to be noted that this witness did not observe defendant at the time, or immediately before, he killed Larry. Although objected to by the State before the question was completed, and defendant’s counsel should have been allowed to complete it, the confusing nature of part of the question asked precludes a determination that the trial court was in error in sustaining the objection of the State.
Furthermore, the witness was allowed to testify thereafter, over the objection of the State, as follows:
“Q Do you have an opinion whether you think that afternoon he was sane or insane?
“A Insane?
“Q Was he sane, in your judgment, that afternoon, was he sane or insane?
“A Well, I really don’t know.”
In addition, if it is to be assumed that witness’ answer to the question to which the objection was sustained would have been to the effect that at the time she observed defendant, he could not distinguish right from wrong, we think the action of the court in sustaining objection thereto was harmless in view of subsequent testimony by the witness as follows:
“Q Did he appear to know what he was doing?
“A I don’t know. I don’t believe he knowed what he was doing, no.”
Her testimony that in her opinion defendant did not know what he was doing was even stronger in favor of defendant than would have been testimony by her that he could not tell the difference between right and wrong at that time. We find no error prejudicial to defendant in this particular ruling of the court.
No harmful error is shown by the following:
“Q O.K. His reputation for peace and quiet is good but has he ever been in trouble with the law before?
“A Not to my knowing.
“MR. LEONARD: I object.
“THE COURT: I overrule your objection.'’
The answer of the witness was favorable to defendant. The overruling of an objection to a question is harmless when the answer thereto is favorable to the objecting party. *1189 Talley v. State, 174 Ala. 101, 57 So. 445 (1912); Coats v. State, 253 Ala. 290, 45 So.2d 35 (1950); Narrell v. State, 25 Ala.App. 426, 148 So. 166 (1933).
On defendant’s motion for a new trial, the proposition was advanced by him, for the first time in this case, that defendant, as an indigent, was entitled, at State expense, to a court reporter at his preliminary hearing and a transcript of the evidence presented at that time. He argues that as it has been held that the preliminary hearing is a critical stage in the prosecution of a criminal case in Alabama (Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387), his constitutional right was violated by his not being provided a court reporter and a transcript as to the preliminary hearing. Appellant relies upon Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) and Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966). Each case is distinguishable from this one, particularly in that the request was seasonably made, for a transcript of the preliminary hearing in Roberts and of a habeas corpus proceeding in Long, and was not postponed, as in this case, until defendant had been tried and convicted. Furthermore, all questions raised by the proposition advanced have been determined adversely to appellant in Williams v. Jasper, 47 Ala.App. 91, 250 So.2d 699, cert. denied 287 Ala. 237, 250 So.2d 701.
In the closing argument of counsel for the State, he stated:
“I haven’t found a defendant yet who comes into the Court Room that couldn’t get someone to say he was a person of good character. Just bring your friends in. I can do it. You can do it. John Booth Wilkes [sic] did it who shot President Lincoln. Anybody can do it. You see, you can bring someone in and say you’re a person of good character. You can bring your friends in here, see.”
No objection was made to the argument. The question of its propriety was first presented on defendant’s motion for a new trial. Appellant urges that the argument was so “ineradicably prejudicial” that it did not require any objection, and that the court should have granted a new trial by reason of such argument.
We certainly do not approve the argument. Its historical inaccuracy is confusing, and its purported application is unclear, in the light of the fact that John Wilkes Booth was never tried. Even so, appellant presents no authority, and we can find none, to the effect that the argument was so ineradicably prejudicial that it justified granting a motion for a new trial.
We have searched the record for error prejudicial to defendant and have found none. Let the judgment of the trial court be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

. Defendant afterwards developed the matter on cross-examination.