238 So.2d 922

**Roscoe HICKS**

**v.**

**STATE.**

**6 Div. 67.**

Court of Criminal Appeals of Alabama.

Aug. 25, 1970.

Curtis, Maddox & MacLaurin, Tweedy & Beech, Jasper, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

Second degree murder with a twenty-five year sentence. Appellant elected to go to the penitentiary forthwith.

The trial was held in February 1968 and took eleven days. The last brief was filed with this Court February 17, 1970.

## I

Hicks was indicted for the murder of his son, Eli, age 23.

The tendencies of the State's evidence showed that Eli Hicks was killed by a bullet or two bullets fired from a 25 cal. Galesi pistol. Such a pistol at one time the victim himself had bought in a pawnshop in Jasper.

Eunice Pullen, the deceased's sister, testified that she and her brother had fired such a pistol into an oak tree. Bullets from a slab cut out of the tree matched bullets found in Eli's body.

Hicks admitted having possession of the gun until it "went missing" about two weeks before his son's death.

The night before the body was found Hicks stated he slept at a creek bank trailer about two miles from the family home. The next morning as he came to the family home, he found a pane broken in the back door. Inside Eli was across the foot of a bed dead, one wound in the head, another in the chest region.

Officers found human blood on Hicks's Volkswagen. He explained these traces by claiming to have cut one arm at the wrist on a jagged shard of a "dope" (i. e. Coca Cola) bottle.

The State offered evidence of Hicks's considerable indebtedness, mostly in installment loans or accounts.[1] Eli was insured for over $6,400.

One witness testified that Hicks in speaking of his son twice stated he was going to kill the s. o. b.

The defense contradicted the State as to the indebtedness being more than Hicks could handle on his salary as an assistant mine foreman. Moreover, a number of witnesses testified as to his being kind and considerate to his son.

We consider that there was sufficient palpable evidence to support the verdict.

## II

We are cited to Horn v. State, 22 Ala.App. 66, 111 So. 452 for the proposition that the trial judge erred in refusing requested written Charge 8:

"8. The court charges the jury that, if after considering all the evidence in the case, you have a reasonable doubt as to the guilt of the defendant growing out of any part of the evidence, you should find him not guilty." [2]

Counsel must surely advance this argument with tongue in cheek for he himself submitted and the trial judge gave written Charges 7 and 9, which read:

"7. The court charges the jury that, if, upon considering all the evidence, you have a reasonable doubt about the defendant's guilt, arising out of any part of the evidence, then you should find the defendant not guilty.

"9. The court charges the jury that, if, upon consideration of all the evidence, they have a reasonable doubt of the defendant's guilt, arising out of any part of the testimony, they must find the defendant not guilty."

---

1. Considerable evidence was received that Hicks was playing "sugar daddy" to one Elizabeth Blackburn, *nee* Robinson aged 24 whose husband was, during part of Hicks's dalliance with her, lodged in jail. This episode recalls Judge Terrell's analogy in Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480:

    "The extent to which man has been the victim of woman's wit and diplomacy is ample to offset his bragging. Eve cast a spell over Adam and he took the forbidden apple. Barak would never have been heard of but for the urge of Deborah, and Jael, the wife of Heber the Kenite, slew Sisera by driving a tent peg through his temples. Samson fell for the duplicity of Delilah and tradition tells us that Cleopatra made a fool of Caesar and Mark Antony. Peggy O'Neal was the bane of Jackson's kitchen cabinet."

2. See Sanford v. State, 37 Ala.App. 603, 75 So.2d 109; Gautney v. State, 284 Ala. 82, 222 So.2d 175.

At the risk of didacticism, we point out that Code 1940, T. 7, § 273, Sent. 4, is not confined to refused charges vis-a-vis the court's general charge. That sentence reads:

" * * * The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge *or in charges given at the request of parties. * * *.*"* (Italics added).

This statutory restriction obviates any claim of error in the refusal of Charge 19 on circumstantial evidence in view of given Charges 20, 21, 22, 23, 24 and 25.

### III

Claim of error is posed in a local law as to juries in Walker County. This is Act No. 115, approved June 22, 1953. Acts 1953, p. 164; Michie's Code, T. 13, § 125 (61)–125(71), incl.

On January 5, 1968, the day set for arraignment, defense counsel moved that the court comply with Code 1940, T. 30, § 63, the general statute for a special venire of from 50 to 100 veniremen in capital cases.

Conflict with Art. 2 of Ch. 5 (§§ 63–71, incl.) was assigned as ground for Act No. 115's being unconstitutional. A claimed difference from the Jefferson County act is argued in brief. See Burns v. State, 246 Ala. 135, 19 So.2d 450.

■ It is argued that because the fourteenth judicial circuit, since 1947 (Act No. 378, Aug. 16, 1947), has comprised only the county of Walker, Act No. 115 is local legislation proscribed by the Constitution of 1901.

We find it unnecessary to pass on this question for a number of reasons. First, the trial judge exercised his discretion to order that the defendant (a) be served with a certified copy of the indictment in open court on January 5, 1968, well in advance of arraignment which was actually (after postponement) held February 2, 1968. Also, the court basically followed the general law rather than Act No. 115, supra. Code 1940, T. 30, § 46.

There was no error in overruling the motion to quash the venire.

### IV

The trial judge overruled a motion for change of venue. Code 1940, T. 15, § 267 reads as follows:

"Any person charged with an indictable offense may have his trial removed to another county, on making application to the court, setting forth specifically the reasons why he cannot have a fair and impartial trial in the county in which the indictment is found; which application must be sworn to by him, and must be made as early as practicable before the trial, or may be made after conviction, on new trial being granted. The refusal of such application may, after final judgment, be reviewed and revised on appeal, and the supreme court or court of appeals shall reverse and remand or render such judgment on said application, as it may deem right, without any presumption in favor of the judgment or ruling of the lower court on said application. If the defendant is in confinement, the application may be heard and determined without the personal presence of the defendant in court."

However, we have not had our attention directed to a "sworn" application for a change of venue. We have noticed an oral motion for continuance (R. pp. 46–48). The court indicated that bias or prejudice because of a newspaper story could be ascertained on qualifying the jurors. The motion to continue was not pressed further.

### V

■ We find no merit in the sought for exclusion of evidence consisting of the bullets taken from the oak tree at Hicks's trailer. This sequestration was pursuant to a search warrant meeting the strictures

of Mr. Justice Merrill in Davis v. State, 286 Ala. 117, 237 So.2d 640.

Hence, we need not fall back on the "open field" doctrine even though the record is not clear as to the extent of the curtilage about the trailer.[3]

## VI

We have carefully considered each and every of the rulings below which were adverse to the defendant. From this examination under Code 1940, T. 15, § 389, we conclude the judgment below is due to be

Affirmed.

---

3. Cf. United States v. Sorce, 7 Cir., 325 F.2d 84.