252 So.2d 304

Roosevelt HOWARD, alias Pee Wee Howard

v.

STATE of Alabama.

3 Div. 423.

Supreme Court of Alabama.

Dec. 17, 1970.

After Remandment Sept. 9, 1971.

**436**

Gray, Seay & Langford, Montgomery, for petitioner.

MacDonald Gallion, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for appellee.

PER CURIAM.

This appeal is from a judgment of the Circuit Court of Butler County, Alabama, denying a petition for a writ of error coram nobis. The petition for writ of error coram nobis was filed on August 16, 1968. The State's answer thereto was filed on September 19, 1968. The trial judge set the petition down for hearing and heard the same on November 15, 1968.

In substance, the petition alleges that the petitioner was tried, convicted, and the death penalty imposed by a jury from which had been excused for cause all veniremen who voiced a general objection to the death penalty, thereby denying the petitioner due process and equal protection of the laws guaranteed by the 14th Amendment to the Constitution of the United States.

The rulings of the lower court complained of by the petitioner and alluded to in the testimony quoted infra were apparently based upon the authority of Sec. 57, Title 30, Code of Alabama 1940, Recompiled in 1958, which is as follows:

"On the trial for any offense which may be punished capitally, or by imprisonment in the penitentiary, it is a good cause of challenge by the state that the person has a fixed opinion against capital or penitentiary punishments, * * *."

On the hearing of the petition for writ of error coram nobis, the lower court heard ore tenus the testimony of Hon. Arthur E. Gamble, Jr., District Attorney at the time of petitioner's trial, and the petitioner, both of whom were called by the defense and available for cross-examination by the State. Pertinent to the petitioner's contention is the following testimony of Mr. Gamble, to wit:

"Q. What are (sic) the total number of names on that venire?

"A. There were ninty (sic) regular jurors and—well, there are a hundred and one.

"Q. A Hundred and one. Did you, as District Attorney request that the Court qualify the members of the venire as to their beliefs in penitentiary punishment?

"A. I believe the Court did that in it's (sic) general qualifications.

"Q. As a part of your geenral practice do you make such a request in capital cases where you intent (sic) to ask for the death penalty?

"A. No, The Court usually does that in the general qualifications of the jury.

"Q. Well, does The Court also do that in capital cases where the District Attorney indicates that he will not seek the death penalty?

"A. In all capital cases that I participated in, The Court has qualified the jury as to their fixed opinion of capital punishment.

**437**

"Q. Did The Court so qualify each of the persons on that venire?

"A. If I remember right The Court asked them if they had a fixed opinion against capital or penitentiary punishment.

"Q. How many people indicated that they had a fixed opinion against capital or penitentiary punishment?

"A. I don't recall right now, I could count up the number of people that the State challenged for cause.

\*    \*    \*    \*    \*    \*

"THE WITNESS: There were ten indicated on my list that were challenged for cause.

"Q. (By Mr. Seay:) Were they challenged for cause on any other grounds other than that they had a fixed opinion against penitentiary or capital punishment?

"A. I don't recall if there (sic) were.

"Q. Now, would you read for the record the names of those ten persons.

"A. Herbert Patton, William Pierce, Bernard L. Roper, Tom Walton, Amerine Brown, Hosea Campbell, J. W. Casey, Slyvester Dixon, Albert Morris Middleton, Chester Tillere and Charlie Womack.

"Q. After these persons indicated thay had a fixed opinion against capital or penitentiary punishment, no questions were put to them to determine the basis for their belief, were there?

"A. I don't recall any, I understand that there were some asked, but I don't have any recollection of it myself.

"Q. Alright. No questions were put to these persons to determine under some circumstances or some set of facts if they would render a verdict of guilty and impose capital punishment?

"A. As I say, I understand there were some qualifying questions asked, but I don't have any independent recollection of them myself.

"Q. Isn't it a fact, Mr. Gamble, that when these persons indicated they had a belief of this capital punishment—

"MR. HARTLEY: We object to the question 'belief' as it is a fixed opinion.

"Q. (By Mr. Seay:) Alright, these people had a fixed opinion against capital punishment then. There were some persons challenged for cause and were dismissed by The Court, weren't there?

"A. They were challenged for cause when they indicated they had a fixed opinion against penitentiary or capital punishment.

"Q. And The Court granted the States (sic) Challenge in each case, did he not?

"A. That's right, I don't recall The Court refusing to grant that.

\*    \*    \*    \*    \*    \*

"Q. Were there any persons who indicated a fixed opinion against capital or penitentiary punishment, whom the State did not challenge for cause?

"A. I don't recall any."

On cross-examination, the State failed to elicit testimony from Mr. Gamble contradicting that which he had given on direct examination.

The Supreme Court of the United States, on June 3, 1968, rendered its opinion in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, wherein it held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed concientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." Id., at 522–523, 88 S.Ct. at 1777. By footnote 22 to the opinion, the holding was given retroactive application.

In Boulden v. Holman, Warden, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433, the Su-

preme Court of the United States determined the effect, if any, of the *Witherspoon* doctrine, supra, on the procedures followed in this state under the provisions of Section 57, Title 30, supra. That court stated as follows:

"* * * Eleven veniremen, however, appear to have been excused for cause simply on the basis of their affirmative answers to the question whether, in the statutory language, they had 'a fixed opinion against' capital punishment. * * * Two other veniremen seem to have been excluded merely by virtue of their statements that they did not 'believe in' capital punishment. Yet it is entirely possible that a person who has 'a fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law—to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case.

"It appears, therefore, that the sentence of death imposed upon the petitioner cannot constitutionally stand under Witherspoon v. Illinois. We do not, however, finally decide that question here, for several reasons. * * *" Id., at 482–484, 89 S.Ct. at 1141–1142.

The Supreme Court of the United States, in the *Boulden* case, supra, vacated the judgment of the Court of Appeals and remanded the case to the District Court for further consideration of the question presented.

What we said in Jackson v. State, 285 Ala. 564, 234 So.2d 579, is equally applicable to the case at bar and will serve to guide the court below in its conduct of a further hearing, to wit:

"Accordingly, this case is remanded to the lower court with instructions that a hearing be conducted with the appellant and his attorneys present, and those jurors who were excused upon challenge because of their affirmative answers to the general question as to a fixed opinion against capital punishment, be summonsed and examined.

"This examination should be directed toward determining whether or not they could, in view of their affirmative answers as to having fixed opinions against capital punishment, nevertheless consider the evidence and instructions of the court and return a verdict of guilty although that verdict could result in a death penalty, if they, being the triers of fact were convinced of the guilt of the accused, and that the facts warranted a sentence of death.

"The court is further instructed that this hearing be conducted as speedily as is feasible, that a full record be made thereof, a transcript of such record be made, together with the court's conclusions from the evidence adduced, and that a transcript of these proceedings under the seal of the clerk, be promptly forwarded to this court." Id., at 571, 234 So.2d at 586.

Remanded for further proceedings in accordance with this opinion.

All the Justices concur except LIVINGSTON, C. J., not sitting.

#### After Remandment

#### PER CURIAM.

Pursuant to this Court's order of remandment, a hearing was held by the court below on March 12, 1971.

Preliminary to conducting an extensive examination of the jurors excused on challenge by the State on the ground of their opposition to the death penalty, the State and the defense counsel agreed that juror, Herbert Patton, was no longer alive. The record shows the following transpired, to-wit:

"THE COURT: Is it possible for the record to show that the juror, Herbert

Patton, is deceased? Can that be stated?

"MR. BRYAN: Yes, sir.

"MR. SEAY: Yes, Your Honor.

"THE COURT: Let the record show that the parties stipulate in open court that the prospective juror, Herbert Patton, is deceased and that the remaining jurors named in the opinion are present in open court. * * *"

Under the holding of this Court in Liddell v. State, 287 Ala. 299, 251 So.2d 601, wherein, on remandment, it was discovered that one of the jurors who had been excused on challenge by the State at the time of trial on the basis of opposition to the imposition of the death penalty had died in the interim between the time of trial and the hearing on remandment, it is required that this judgment be reversed and the cause remanded for a new trial. In so doing, attention is called to the admonition expressed in *Liddell*, supra:

"* * * In all capital cases a juror answering that he has a fixed opinion against capital punishment, cannot properly be challenged solely on the basis of such answer. He should be examined fully to determine if his feelings as to capital punishment are sufficiently strong that he would automatically refuse to impose a death sentence regardless of the evidence produced.

"The trial court should further make certain that the court reporter takes full notes from which a transcription can be made of the examination of the jurors relative to qualifying them." Id., at 310, 251 So.2d, at 612.

Reversed and remanded.

HEFLIN, C. J., and LAWSON, SIMPSON, MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.